UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

MARCOS ROMERO, on behalf of himself, FLSA
Collective Plaintiffs, and the Class,

                                            Plaintiff,

                    -against-

NEW BLUE FLOWERS GOURMET CORP., d/b/a
CAFÉ ALICE, *et al.*,

                                            Defendants.

------------------------------------------------------------------

16cv08753 (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

      In the above-captioned wage-and-hour case, which is before this Court on consent of the

parties pursuant to 28 U.S.C. § 636(c), plaintiff Marcos Romero ("Plaintiff") has moved to

enforce the parties' court-approved settlement agreement and for entry of judgment against

defendants New Blue Flowers Gourmet Corp., d/b/a Café Alice; 74 Fifth Ave Market Corp.,

d/b/a U Way Café; Valent & Cook At 57th Street Corp., d/b/a C'est Bon Café, and Byung Sik

Lim (collectively, herein, "Defendants")[1] due to their alleged failure to pay the settlement

amount.  At the same time, the Austin Brown Law Firm ("Brown Law") has moved to withdraw

as counsel for Defendants in connection with this case, including with respect to Plaintiff's

---

[1] Plaintiff had also originally named Byung Nak Lim as a defendant in this action (*see* Complaint, dated Nov. 10, 2016 ("Compl.") (Dkt. 1)), and had initially included him as one of the defendants as to whom the motion to enforce the settlement was directed (*see* Notice of Motion, dated June 12, 2020 (Dkt. 53)).  The Court, however, noted that the case had already been voluntarily dismissed against this defendant (*see* Notice of Dismissal Pursuant to FRCP 41(a)(1)(A)(i), dated Feb. 14, 2018, and "so ordered" Feb 16, 2018 (Dkt. 46)), and thus sought clarification from Plaintiff as to why he was now seeking a judgment against him (*see* Order, dated Oct. 9, 2020 ("10/9/20 Order") (Dkt. 56)).  By letter dated October 21, 2020, Plaintiff's counsel informed the Court that Plaintiff had decided to "withdraw . . . [his] request to enforce the settlement agreement against Byung Nak Lim."  (Letter to the Court from Anne Seelig, Esq., dated Oct. 21, 2020 ("10/21/20 Selig Ltr.") (Dkt. 59).)

motion to enforce the settlement.  To date, Defendants have not submitted any response to either Plaintiff's motion or Brown Law's withdrawal application.

For the reasons discussed below, (1) Plaintiff's motion to enforce the settlement (Dkt. 53) is granted in part and denied in part, and (2) Brown Law's motion to withdraw as counsel (Dkt. 58) is granted.

## BACKGROUND

Plaintiff, a former employee of Defendants, brought this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  (*See* Compl.)  After two years of litigation, the parties proposed a settlement for court approval pursuant to *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015), and Plaintiff also submitted a letter to the Court, explaining why Plaintiff believed the proposed settlement agreement was fair, reasonable, and adequate.  (*See* Letter to the Court from C.K. Lee, Esq., dated Apr. 2, 2018 (Dkt. 51); *see also* Dkt. 51-1 (the "Settlement Agreement").)  In May 2018, the Court entered an Order dismissing the case, based on the Court's approval of the Settlement Agreement.  (*See* Order of Dismissal, dated May 14, 2018 ("Dismissal Order") (Dkt. 52); *see also* Dkt. 47 (parties' consent to proceed before this Court pursuant to 28 U.S.C. § 636(c)).)  In its Dismissal Order, the Court expressly stated that it would retain jurisdiction over the matter, for purposes of enforcing the Settlement Agreement (*see* Dismissal Order ¶ 2).

In June 2020 – more that two years after the case's dismissal – Plaintiff filed a motion to enforce the Settlement Agreement and for entry of judgment in the amount of $13,987.33.[2]

---

[2] In his motion, Plaintiff also requested that the Court award him attorneys' fees in the amount of $925.00 (*see* Dkt. 53), but, after the Court directed Plaintiff to provide authority for the proposition that he could be awarded attorneys' fees for the work incurred in connection with seeking to enforce the settlement (*see* 10/9/20 Order), Plaintiff informed the Court that he was withdrawing that request (*see* 10/21/20 Selig Ltr.).

(Dkt. 53.)  In the Settlement Agreement, Defendants had agreed to pay $12,000 to Plaintiff by

April 1, 2019.  (*See* Settlement Agreement ¶ 2.)  More specifically, under the agreement,

Defendants were required to remit 12 payments of $1,000 each over 12 months, beginning on

May 1, 2018 and ending on April 1, 2019.  (*See id.*)  In addition, the parties agreed that, if any of

the payments were "not timely made, subject to a one-week grace period, the full balance of the

Settlement Agreement [would] be[come] due and payable immediately[,] and Defendants

[would] also be penalized [10] percent (10%) for the unpaid balance, compounded monthly, and

accruing from the date of default."  (*Id.*)  According to a Declaration made under penalty of

perjury by Plaintiff's counsel (*see* Declaration of Anne Seelig, Esq., dated June 12, 2020 ("Seelig

Decl.") (Dkt. 54)), Defendants, as of the date of Plaintiff's motion to enforce, had "not remitted

any of the $12,000 settlement amount" (*id*. ¶ 3; *see also* Plaintiff's Memorandum of Law in

Support of Motion to Enforce Settlement Agreement, dated June 12, 2020 ("Pl. Mem.")

(Dkt. 55), at 3.)

On October 13, 2020, Thomas Austin Brown, Esq. ("Brown") filed a letter to the Court,

on behalf of Brown Law, seeking leave to withdraw from representing Defendants in connection

with this case, including with respect to Plaintiff's motion to enforce the Settlement Agreement.

(Letter to the Court from T. Austin Brown, Esq., dated Oct. 13, 2020 ("Brown Ltr.") (Dkt. 58).)

In the letter, Brown stated that, although he had received Plaintiff's motion, he had been unable

to contact his clients by mail, telephone, or email, and therefore Brown Law could not respond to

the motion on their behalf.  (*See id.*)

Despite having been given opportunities to respond to both Plaintiff's motion to enforce the settlement and Brown Law's application to withdraw as counsel,[3] Defendants have not responded to either.

## DISCUSSION

I.   **PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT**

   A.   **Applicable Legal Standards**

   A settlement is a contract that, "[o]nce entered into, . . . is binding and conclusive." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). A "district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it," *CM Dev., LLC v. Oprandy*, 490 F. App'x 409, at *1 (2d Cir. 2013) (summary order) (citing *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)), including by entry of judgment, *see, e.g.*, *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir. 1986) (finding court had authority to enter judgment to enforce a settlement reached during proceedings before the court); *Butler v. Suria*, No. 17cv3077 (KPF), 2020 WL 5105160, at *1-3 (S.D.N.Y. Aug. 31, 2020) (same). A claim for breach of contract is, however, a state-law claim, *Walker v. Carter*, 210 F. Supp. 3d 487, 499 (S.D.N.Y. 2016), and, thus, where a federal suit has

---

[3] As noted above (*see supra* at nn.1, 2), after Plaintiff filed his motion to enforce the settlement, the Court issued an Order directing Plaintiff to supplement that motion to address certain issues. (*See generally* 10/9/20 Order.) In the same Order, the Court informed Defendants that, if they failed to respond to Plaintiff's motion or his supplemental submission, then the Court would proceed to decide Plaintiff's motion based on Plaintiff's submissions alone. (*See id.*) Then, on January 4, 2021, after receiving Brown's letter request to withdraw as counsel, the Court issued a second Order, directing Brown to serve a copy of his letter on Defendants, together with a copy of the January 4 Order, by mail and email to Defendants' last-known addresses, no later than January 8, 2021, and to file proof of such service on the Docket. (*See* Order, dated Jan. 4, 2021 ("1/4/20 Order") (Dkt. 60); *see also* Dkt. 61 (Affidavit of Service).) In its January 4 Order, the Court specified that, if any of the Defendants wished to be heard with respect to Brown Law's request to withdraw, then, no later than January 22, 2021, such Defendants were to submit their responses to the Court, with a copy to Brown Law. (*See id.*)

already been dismissed based on a settlement agreement, and the plaintiff thereafter asks the court to enforce the parties' agreement, the court must first satisfy itself that it has retained ancillary jurisdiction to act.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80 (1994).

In order for a district court to exercise jurisdiction to enter an enforceable judgment in such circumstances, the court must:  (1) have expressly retained jurisdiction over the settlement agreement in its order of dismissal; (2) have incorporated the terms of the settlement agreement in the order of dismissal; or (3) have an independent basis for asserting jurisdiction over the enforcement of the settlement agreement.  *See id.* at 381-82; *see also Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) ("[T]o retain ancillary jurisdiction over enforcement of a settlement agreement, *Kokkonen* prescribes that a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order.").

Under Second Circuit law, a settlement of an FLSA case is subject to judicial review for adequacy and fairness.  *See generally Cheeks*, 796 F.3d 199.  Where, after the requisite review, the district court enters a dismissal order containing an express retention of jurisdiction to enforce the parties' settlement agreement, the court may then exercise ancillary jurisdiction and enforce the agreement according to its terms.  *See, e.g., Minecci v. Carlyle at the Omni, Inc.*, 2:16-CV-05134 (JS) (GRB), 2019 WL 1760683, at *1 (E.D.N.Y. Mar. 21, 2019) (in FLSA case, recommending that plaintiffs' motion to enforce the parties' court-approved settlement agreement be granted), *report and recommendation adopted*, 2019 WL 1757776, at *1-2 (Feb. 27, 2019).  Moreover, in this context, the court may proceed to enforce the agreement by entry of judgment.  *See id.*, 2019 WL 1757776, at *1-2 (finding it appropriate to enter judgment against

5

defendants for full amount owed under the settlement agreement).  The settlement agreement, itself, should be "interpreted according to general principles of contract law."  *Omega Eng'g Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

    **B.**    **Plaintiff Is Entitled to Judgment in the Amount of $15,911.88.**

"Under New York Law . . . for breach of contract, the elements of the claim are a contract, the plaintiff's performance under the contract, the defendant's breach, and damages resulting from the breach."  *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 980 F. Supp. 2d 400, 408-09 (E.D.N.Y. 2013) (citation and quotations omitted).[4]

In this case, the record reflects (as set out above), that the parties entered into a settlement agreement that was approved by the Court, and that the Court expressly retained jurisdiction to enforce it.  Under the terms of the written Settlement Agreement, Defendants (1) agreed to pay $12,000 as full settlement of Plaintiff's claims against them, and (2) agreed that, should Defendants fail to pay Plaintiff, Defendants would be "penalized [10] percent (10%) for the unpaid balance, compounded monthly, and accruing from the date of default."  (Settlement Agreement ¶ 2.)  The record also shows that, pursuant to the agreement, Plaintiff performed his

---

[4] The Settlement Agreement does not contain a choice-of-law provision, and the parties have not addressed the issue of which state's substantive law should be applied.  Indeed, Plaintiff (the only party to submit briefing on the motion to enforce the settlement) has not cited to state law in his brief, and, thus, the Court cannot confirm that even Plaintiff has consented to having New York law control.  *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (noting that, where "[t]he parties' briefs assume that [a particular state's] law controls, [] such implied consent . . . is sufficient to establish choice of law" (internal quotation marks and citation omitted)).  Nonetheless, the Court finds that New York law should apply here, as, on a federal common-law choice-of-law analysis, the Court "appl[ies] the law of the jurisdiction having the greatest interest in the litigation," *Lola v. Skadden, Arps, Slate, Meagher & Flom LLP*, 620 Fed. Appx. 37, 42 (2d Cir. 2015) (internal quotation marks and citation omitted), and, in this case, the parties are all either domiciled or doing business in the State of New York and the underlying events of the suit occurred in New York.

part by voluntarily agreeing to the dismissal of his claims, but Defendants did not satisfy their payment obligations.

Specifically, Plaintiff has established through competent evidence, in admissible form, that, as of the date of Plaintiff's motion, Defendants had failed to make any of the requisite payments under the Settlement Agreement.  (*See* Seelig Decl. ¶ 3.)  Indeed, it appears to the Court that, to date, Defendants have still made no such payments, as Defendants have not filed any submission suggesting otherwise.  Thus, the Court finds that Defendants are in breach of the Settlement Agreement, that Plaintiff has been damaged thereby, and that Plaintiff is entitled to judgment in the full amount owed pursuant to the agreement's terms.

This amount includes the principal sum of $12,000, plus penalties in the amount of $3,911.88.  As explained by Plaintiff,[5] the penalty amount is appropriately calculated in accordance with the provisions of Section 2 of the Settlement Agreement, which states that, if any of Defendants' payments are "not timely made, subject to a one-week grace period, [then] the full balance of the Settlement Agreement [would] be[come] due and payable immediately[,] and Defendants [would] also be penalized [10] percent . . . for the unpaid balance, compounded monthly, and accruing from the date of default."  (Settlement Agreement ¶ 2.)  As Defendants failed to remit their first payment of $1,000 on May 1, 2018, the one-week grace period expired on May 8, at which time the full $12,000 became immediately due and payable.  Under the

---

[5] On February 25, 2021, the Court issued a third Order, directing Plaintiff to supplement his submissions to explain more fully his "interest" (*i.e.,* penalties) calculation, as the Court was unable, based on Plaintiff's earlier submissions, to replicate the penalty figure that Plaintiff had initially proposed.  (Dkt. 62.)  In response, on March 3, 2021, Plaintiff submitted a letter to the Court, with an attached spreadsheet, wherein he revised his calculation and explained the basis for his position that, as of March 2021, Defendants owed $3,911.88 as a contractual penalty. (Letter to the Court from Anne Seelig, Esq., dated Mar. 3, 2021 ("3/3/21 Selig Ltr.") (Dkt. 63); *see also* Dkt. 63-1 (Spreadsheet).)

agreement, it follows that "Defendants should be penalized based on [10%] percent . . . of the full balance owed ($12,000), compounded monthly, accruing from May 8, 2018" to the present. (*See* 3/3/21 Selig Ltr.)  Based on that formula, as of March 8, 2021, the contractual penalty owed amounts to $3,911.88.  (*See* Dkt. 63-1 (Spreadsheet).)  Accordingly, as of the date of this Memorandum and Order, Plaintiff is entitled to judgment in the total amount of $15,911.88, and the Court will proceed to enter judgment in that sum.

The Court notes that, however, that Plaintiff has *not* demonstrated entitlement to a judgment containing a "failure to pay" provision pursuant to Section 198(4) of the New York Labor Law – a provision that Plaintiff included in the proposed Judgment that he submitted to the Court together with his motion papers.  (*See* Dkt. 53-1 ("Proposed Order").)  Section 198(4) states, in relevant part, that:

> [a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of [90] days following issuance of judgment, or [90] days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by [15] percent.

NYLL § 198(4).  Despite Plaintiff's apparent position that the Court should authorize this type of penalty, should Defendants fail to pay the judgment, Section 198(4) is inapplicable here.

Both the statutory language and case law reflect "that this provision is included when a court issues a judgment based upon a NYLL cause of action."  *Minecci*, 2019 WL 1757776, at *2; *see, e.g., Gonzalez-Diaz v. Daddyo's Mgmt. Grp., Inc.*, No. 16 CV 1907 (ENV) (RML), 2017 WL 7625319, at *4 (E.D.N.Y. Nov. 7, 2017) ("I conclude that the entire judgment a court awards under the NYLL is subject to the automatic increase provisions"); *Romero v. Anjdev Enters., Inc.*, No. 14cv457 (AT), 2017 WL 548216, at *13 (S.D.N.Y. Feb. 10, 2017) ("Pursuant to the NYLL, if any amounts of damages awarded under the NYLL remain unpaid . . . the total

amount of judgment shall automatically increase by [15] percent.") (internal quotation marks,

citation, and brackets omitted); *Montellano-Espana v. Cooking Light Inc*., No. 14 CV 01433 (SJ)

(RLM), 2016 WL 4147143, at *8 (E.D.N.Y. Aug. 4, 2016) (applying Section 198(4) because

"[p]laintiff's damages are all awarded under the NYLL").  By contrast, in this case, the Court is

"enforcing a settlement agreement, which is fundamentally a cause of action sounding in breach

of contract." *Minecci*, 2019 WL 1757776, at *2 (declining to include NYLL § 198(4) in the

judgment entered against defendants where it resulted from their breach of the parties' settlement

agreement); *see also Powell*, 497 F.3d at 128.

Accordingly, while Plaintiff's motion to enforce the Settlement Agreement is granted to

the extent that the Court will enter judgment against Defendants for the amount due under that

agreement, the motion is denied to the extent Plaintiff seeks additional relief under

Section 198(4).

## II.     **BROWN LAW'S MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANTS**

### A.     **Applicable Legal Standard**

Withdrawal of counsel is governed by Local Civil Rule 1.4, which provides:

> An attorney who has appeared as attorney of record for a party . . .
> may not withdraw from a case without leave of the Court granted
> by order.  Such an order may be granted only upon a showing by
> affidavit or otherwise of satisfactory reasons for withdrawal or
> displacement and the posture of the case, including its position, if
> any, on the calendar . . . .

"Satisfactory reasons" include the client's "failure to pay legal fees, a client's lack of

cooperation – including lack of communication with counsel, and the existence of an

irreconcilable conflict between attorney and client." *Diarama Trading Co., Inc. v. J. Walter*

*Thompson U.S.A., Inc*., No. 01cv2950 (DAB), 2005 WL 1963945, at *1 (S.D.N.Y. Aug. 15,

2005) (internal quotation marks and citation omitted).  A court may also consider whether the

motion is opposed, *see Stair v. Calhoun*, 722 F. Supp. 2d 258, 265 (E.D.N.Y. 2010), or whether

"the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel," *Whiting v.*

*Lacara*, 187 F.3d 317, 320-21 (2d Cir. 1999) (internal quotation marks and citation omitted)

(alteration in original).  Ultimately, the decision "[w]hether to grant or deny a motion to

withdraw as counsel falls to the sound discretion of the trial court."  *S.E.C. v. Gibraltar Global*

*Secs., Inc.*, No. 13cv2575 (GBD) (JCF), 2015 WL 2258173, at *1 (S.D.N.Y. May 8, 2015)

(internal quotation marks and citations omitted).

> **B.     Brown Law Has Provided Sufficient Cause to Be Relieved as Counsel.**

Brown Law seeks to withdraw as counsel for Defendants on the stated ground that the

firm has been unable to contact its clients since at least October 2019.  (*See* Brown Ltr.)  Plaintiff

has expressed no position with respect to Brown Law's withdrawal application, and, as noted

above, Defendants have not submitted any opposition.

The Court finds that Brown Law has provided sufficient cause to be relieved as counsel.

The Court credits Brown's representations that attempts were made to contact Defendants at the

same addresses, telephone numbers, and email addresses utilized in the past and that those efforts

proved fruitless.  Brown Law's inability to communicate with its clients due to their continued

unavailability and lack of cooperation serves as a "satisfactory reason" for the Court to grant the

application to withdraw, *Diarama Trading Co.*, 2005 WL 1963945, at *1, especially where

Brown Law's application is unopposed and there is no real concern here (since a settlement was

already reached) that Plaintiff's prosecution of the suit would be disrupted by the withdrawal of

counsel.

Accordingly, Brown Law's motion to withdraw as counsel is granted.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion to enforce the Settlement Agreement (Dkt. 53) is granted in part and denied in part.  Judgment will be separately entered by the Court.

In addition, Brown Law's application to withdraw as counsel (Dkt. 58) is granted, except that Brown Law is directed to serve a copy of this Memorandum and Order on Defendants, by means reasonably calculated to reach them, and to file proof of service.

The Clerk of Court is directed to close Dkts. 53 and 58 on the Docket of this action.

Dated:  New York, New York
        March 8, 2021

                                    SO ORDERED:

                                    _____
                                    DEBRA FREEMAN
                                    United States Magistrate Judge

Copies to:

All counsel (via ECF)